JAMES A. THOMPSON *versus* ELISHA HALLET, JR.

Where fraud is alleged, and all the representations made by the party to the witness were in letters to himself, and the letters are introduced in evidence, the statements of the witness, of their contents, his motives and inferences, are all inadmissible, and are to be disregarded.

If there be any just ground of complaint that the agent to make sale of a mortgage on real estate, who had stated that a certain price was the most he could obtain for it, when it was of much greater value, and it was sold for that price, had in fact himself become the purchaser, the proper mode for the principal to obtain redress, in a court of equity, for such an injury, is not to make an allegation of fraudulent representation, but to call upon the agent to annul the assignment, or to account to the principal for the true value.

BILL IN EQUITY. The whole case appears in the opinion of the Court.

*Bradbury*, for the plaintiff.

*Vose*, for the defendant.

The opinion of the Court was drawn up by

SHEPLEY J. — This bill is filed by the plaintiff, claiming to be the assignee of a second mortgage, and to be also the owner of the estate, to redeem it from the first mortgage. The case is presented upon bill, answer and proof. Certain facts are not disputed. Respecting others there is a contest. And the parties mutually charge upon each other fraudulent acts.

The parties admit, that the defendant being the owner of the estate, on June 18, 1839, conveyed it to Jonas G. Holcomb, who on the same day reconveyed it in mortgage to secure the payment of a part of the purchase money; that the Citizen's Bank caused Holcomb's right to redeem it to be attached, on August, 1, 1840, on a writ made on a draft drawn by Solomon W. Bates on Daniel Wilder, Jr. and by him accepted, and indorsed by the firm of Spaulding & Holcomb; obtained judgment, and caused the right to be sold on the execution issued thereon, on October 22, 1842, to James L. Child for the sum of two hundred dollars. That Holcomb conveyed the same estate in mortgage to John A. Conant in

trust for the Brandon Iron Company, on April 12, 1842. That Conant, on January 25, 1843, assigned that mortgage to the plaintiff. This assignment was recorded on the second day of February following. The defendant alleges, that it was obtained by misrepresentation and fraud; that Conant, by a deed bearing date on May 27, 1844, conveyed all his right to redeem the premises to the defendant. The plaintiff alleges, that this conveyance was obtained by misrepresentation and fraud. The plaintiff alleges, that the right to redeem from the defendant became absolutely vested in the purchaser of it at the sale on execution; that he conveyed it on June 12, 1844, to Thomas W. Smith, who, on July 9, 1844, conveyed it to him. The defendant alleges, that the plaintiff paid the amount due to Child to redeem the estate from that sale, on October 20, 1843, and that these subsequent conveyances were fraudulently made to avoid the effect of that payment and redemption.

It appears, that Holcomb made an assignment of his property to the plaintiff for the benefit of his creditors on June 20, 1842. The total amount of his debts appears to have been about $16000, and the amount due to the Iron Company $12178,22, as stated in the assignment, which was said to contain a clause requiring a release from his creditors, which would destroy its validity. But that instrument has not been proved or introduced in the case.

The first and most material matter in contest is, whether the assignment of the second mortgage, made by Conant to the plaintiff, was fraudulently obtained.

Conant in his testimony states, that he never saw the plaintiff, that all the representations made by him respecting the estate were made in letters to himself, of course his statements of their contents, his motives, and inferences, are all inadmissible, and are to be disregarded, for those letters are produced in evidence.

The first letter is from Conant to the plaintiff, on June 28, 1842, ratifying the acts of John C. Merriam in making the Iron Company a party to the assignment of Holcomb, and in

signing a paper relinquishing to Holcomb furniture named; and waiving further notice. Conant had by a power of attorney, executed on May 11, 1842, authorized Merriam to complete and execute for the Iron Company any business connected with or growing out of their business with Holcomb.

The first misrepresentation insisted upon as contained in the correspondence between the plaintiff and Conant, relates to the value of the estate and the amount, which could be obtained for the rights of the company.

The plaintiff, in his letters of December, 1842, states, that there would be due upon the estate on October 22, 1843, $1074,34, which must be paid to redeem it; and that if he should get nothing from the Bates demand, on which it was sold to Child, " it would be as much as the property would fetch now, if a purchaser could be found." And in his letter to the same, of January, 1843, he says, "I have had an offer of thirty-five dollars for a full discharge of the mortgage; that is a small sum, but is as much, as I can get offered, which will make the property stand $1134, which is as much as it will fetch now."

The only testimony introduced by the defendant, to prove these representations to be false and fraudulent, is the deposition of Loring Cushing, who expresses no opinion respecting the value of the estate, but states its valuation on the assessors' books to have been in the year 1842, $1500, and in the years 1843 and 1844, $1300, and the valuation of the buildings, made on December 23, 1843, by the plaintiff in an application for a policy of insurance upon them.

The plaintiff introduces on this point the testimony of John Dorr, who says, that some two or three years ago the plaintiff informed him, that the right of the Iron Company could be purchased for $50, and the property for about $1100, and advised him to purchase; that he told him he would inform Mr. Wheeler of the chance; that some days after this, the defendant inquired, if he thought of purchasing, and observed that he had a claim against Holcomb, which he should lose, unless he could get the house, and expressed a wish, that he

would not interfere. Dorr states that the house, for a man to live in, was worth more than $1100, but to buy to let or sell again was no object. Ephraim Ballard also states, that late in the fall of 1842 he wished to purchase a house, that the plaintiff informed him of the situation of that house and of the claims upon it, and that he thought, they would come to between $1000 and $1100, and advised him to purchase; that he did not purchase, because he did not then consider it to be worth the money; that the value from the fall of 1842, to the fall of 1843 was less than $1100. James L. Child states, that he offered the plaintiff $35, for the right of the Iron Company, and that it was offered to him for $50, and declined. James W. Bradbury states, that when the property was sold on execution he thought it worth $1200, to a person who wished to live in it, but not more than 1050, to let or sell again. The defendant in his answer states, that he was willing and offered to give $300 for the right to redeem. But this was not responsive to any allegation contained in the bill; it is wholly unsupported by proof, and cannot be easily reconciled with the testimony of Dorr, shewing, that the defendant was informed, that it had been offered for much less, and that he might apparently so have purchased it by the agency of Dorr, if he had been disposed to do it. The plaintiff, in one of his letters, referred Conant to Merriam for the value of the property, and Merriam, while acting as the agent of the Iron Company in May or June, 1842, appears to have boarded in that house, then occupied by Holcomb, two or three weeks. The valuation made by the plaintiff was to continue as a valuation in the policy for six years; it was made nearly a year after his representations of value were made, and not for the purpose of sale or purchase, and after he had procured a cistern to be made. The Court would not be authorized to conclude from such testimony, that the plaintiff misrepresented the value of the property and the amount, for which the right of the Iron Company would be sold.

It is further insisted, that the plaintiff made representations respecting the debt, upon which the sale on execution was made.

In his letter of December, 1842, the plantiff says, " I believe the drawer of the draft has property, but in such a way, that it cannot be found at present." In a postscript to his letter of January, 1843, he says, " I like to have forgotten to mention, that there is no hopes of getting any thing from the debt, for which the house has been recently sold."

Bates states, that the plaintiff called upon him several times before he was able to make any arrangement ; that they nego- tiated for a long time, that the plaintiff tried to get the money, that he was willing but not able to pay ; that they finally made an arrangement about the middle of May, 1843, by plain- tiff's making a discount, and he turned out to him certain notes named, payable in the fall of 1843, without interest, amounting in the whole to $236,50, and that the balance of these notes over about $220, " went as boot between carriages." A witness, who states, that he was willing and unable to pay, may be expected to have made strong statements of that in- ability, while bargaining with one for a discharge of a debt at a discount ; and the plaintiff may have stated to Conant in the postscript to his letter only, what Bates told him, and what he then believed to be true. At least there is no satis- factory proof to the contrary.

It is said, that the claim against Bates was the property of the Iron Company, and that the plaintiff collected it as their agent, and with the proceeds redeemed the property from Child to their use. This position cannot be sustained. He does not appear to have been authorized at any time to redeem it for the company. If the assignment of the mortgage from Conant to the plaintiff is not avoided by the allegations of fraud, it had been perfected by a payment made and accepted in June, 1843, and the plaintiff could not have redeemed the estate for the company in October following. It may not be mate- rial for this purpose, whether the money received for the notes obtained of Bates was used to redeem from Child or not, for in such case it would at most be but a misappropriation of their funds, for which he would be accountable. Upon a careful examination of the testimony, however, it becomes

quite apparent, that the only title of the Iron Company to the claim of Holcomb against Bates was acquired by Holcomb's assignment. Bates states, that the plaintiff told him, the funds were going to the Iron Company; and Holcomb states, that the plaintiff told him, that he supposed the demand against Bates was the property of that company. But both Conant and Holcomb were examined as witnesses for the defendant, and appear to have been disposed to aid him. If there had been any other assignment or conveyance of that claim they, it would seem from the mode of transacting business, must have been parties to it; and yet they do not state or allude to any other. Holcomb states, that the plaintiff told him, when he saw, what he calls a power of attorney to the plaintiff, that he had put the Bates demand among his assets assigned, and that some of his friends told him, it ought to be placed there. Holcomb makes no complaint, that it was improperly placed there, but says that it had not been placed among his assets at an earlier period, and that he had not " primarily received any intimation from Thompson, that the creditors had any claim to the Bates demand." The statements of the plaintiff to Bates and Holcomb, and his remarks in his letters to Conant respecting it, may be accounted for by the fact, that the Iron Company appears to have been entitled to receive three fourths of the proceeds of the property assigned by Holcomb to the plaintiff for the benefit of his creditors.

Conant, when he sent an assignment of his mortgage to the plaintiff and received payment for it, knew, that he had been acting as his agent to make sale of it for the benefit of the company. If under such circumstances there was just cause of complaint, that the agent to sell had become the purchaser, his proper mode to obtain redress for such an injury was not to make an allegation of fraudulent representation, but to call upon him to annul the asssignment or to account to him for its true value.

The plaintiff, having purchased and paid for an assignment of the second mortgage, became entitled to redeem the estate from Child and from the defendant. He paid to Child the

amount due to redeem it from him, on October 20, 1843, and proceeded to expend money upon it, employing Bicknell to build a cistern, only four days after he paid the money to Child. On the twenty-third of December following, he applied to the agent of the Maine Mutual Fire Insurance Company to obtain a policy of insurance upon the buildings for $800, on a valuation of $1500, for the term of six years, and obtained the policy on January 10, 1844. Nine days afterward he made a request in writing to the Insurance Company to transfer $500, of that policy to the defendant, who at the same time agreed in writing to apply whatever he should receive thereby to cancel so much of his mortgage.

Thus far all persons interested appear to have known the state of the title and to have acted accordingly. All the present difficulties have a subsequent origin. Holcomb fancied, that he had seen a power of attorney from Conant to the plaintiff, it may have been the power from Conant to Merriam, and says, that in the winter of 1844 the defendant in conversation informed him, that he had understood from the plaintiff, that he had obtained the right of Child, but should like to ascertain the fact; that he had offered the plaintiff a larger sum, than he gave for the Brandon Iron Company's right, before he bought it, and requested him to ascertain, whether the plaintiff had actually come into possession of their right. According to this account the defendant had been informed, that the plaintiff had obtained both those rights, and appears to have known, that he had insured the buildings for six years as his own, and yet wishes to employ Holcomb to ascertain the facts, some of which were to be found in the registry of deeds. Holcomb and the defendant then commence a correspondence with Conant. Their letters are not produced, but the effect of them was, as Conant states, to induce him to believe, that the fifty dollars paid for the assignment of his mortgage was not a fair price for it, and that the plaintiff had obtained a conveyance of it by fraudulent misrepresentations. Thereupon the defendant, and Holcomb and Conant, without informing the plaintiff of any cause of

complaint, concoct and execute the following arrangement to defeat that assignment. Conant executes a deed, bearing date on May 27, 1844, conveying all his rights to redeem the estate to the defendant for the consideration of $310, and transmits it to Holcomb, who on the twenty-third of the same month, by order of Conant, tenders $53, to the plaintiff to avoid the assignment, and demands it of him. The defendant, as Holcomb states, pays $310,50 for the deed to himself, and Conant states, that $247, were remitted to him, and that he had sent to the defendant a bond with sureties bearing date on May 15, 1844, to indemnify him against any right the plaintiff might have acquired by the assignment of the mortgage. This bond was subsequently cancelled, and Conant and Holcomb become the principal witnesses to prove, that the assignment was procured by fraudulent representations. The defendant cannot be aided by these proceedings.

After the plaintiff became informed of the attempt to avoid the effect of his assignment of that mortgage, he appears to have been apprehensive of danger, whether from a consciousness, that he had not conducted fairly in all respects, does not appear, and to have first conceived the purpose of countermining and defeating the arrangements made to destroy his title by appropriating the money paid to Child, to redeem the estate from the sale on execution, to pay a demand, from which he had obtained a discharge in bankruptcy, that the rights of the second mortgagee, and of those holding under him, might be foreclosed, Child become the absolute owner, subject to the mortgage of the defendant, and convey to some friend, who would convey to him. Thus allowing himself to devise and execute by the assistance of others a stratagem to prevent the effect of a like attempt upon his own title. It will be useless to state the facts and develope the execution of it through the conveyances from Child to Smith and from Smith to the plaintiff; who appears to have furnished the funds to carry it through.

The result appears to be, that the assignment of the mortgage from Holcomb to Conant, is not proved to have been fraudu-

lently obtained; that the plaintiff redeemed the estate from the sale on execution; made a demand of the defendant for an account of rents and profits, on July 9, 1844, which was refused, and thereby becomes entitled to maintain this bill to redeem the estate from him. A decree may be drawn up accordingly, that the plaintiff is entitled to redeem; a master may be appointed to take account and report the amount due on the mortgage to the defendant; and the case stand continued for further proceedings.